UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

NICHOLE ELLER,

     Plaintiff,

v.                                    Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL SECURITY,        Case No. 1:18-cv-1356

     Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security that Plaintiff was entitled to Disability Insurance Benefits (DIB) under Title II of the Social Security Act from August 25, 2014, through June 23, 2017, but not thereafter. The issue presented in this appeal is whether the Administrative Law Judge properly weighed the conflicting medical evidence in determining that Plaintiff's disability ended on June 24, 2017. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards in making a decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

On August 25, 2014, Plaintiff was hospitalized following an automobile accident in which her car was "T-boned" by a semi-truck. (PageID.401.) Plaintiff remained hospitalized for two

weeks with a closed head injury and a pelvic fracture.  (*Id.*)  Plaintiff was in the early stages of pregnancy at the time, but delivered a full-term, healthy baby in April 2015.  (PageID.435–37.)

Plaintiff filed her application for Social Security Disability Insurance Benefits (DIB) on January 21, 2016, alleging that she became disabled on August 25, 2014, due to memory loss, depression, anxiety, knee injury, and head injury.  (PageID.113, 179, 201.)  Her date last insured for DIB was March 31, 2016.  Plaintiff was 23 years old on her alleged disability onset date (PageID.179) and previously worked as a cashier and hospital cleaner.  (PageID.211.)  Plaintiff's application was denied, and she requested a hearing.  (PageID.96–113, 124.)

On January 16, 2018, Administrative Law Judge (ALJ) Kari Deming conducted a hearing and received testimony from Plaintiff and a vocational expert.  (PageID.65–94.)  On February 5, 2018, the ALJ issued a written decision that Plaintiff was entitled to a closed period of benefits. (PageID.42–64.)  Specifically, the ALJ found that Plaintiff was disabled from August 25, 2014 through June 23, 2017, but that Plaintiff's medical condition improved as of June 24, 2017, allowing Plaintiff to perform her past work and other jobs existing in significant numbers in the national economy.  (PageID.58–58.)  The Appeals Council denied review on October 12, 2018. (PageID.31.)  Plaintiff initiated this civil action for judicial review on December 6, 2018.

## ANALYSIS OF THE ALJ'S DECISION

The Social Security Act provides that disability benefits may be terminated if "the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling."  42 U.S.C. § 423(f).  Termination of benefits must be supported by substantial evidence that (1) there has been medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (2) the individual is now able to engage in substantial gainful

activity. *See* 42 U.S.C. § 423(f)(1)(A)–(B); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

The social security regulations articulate an eight-step sequential process by which determinations of continuing disability are made. *See* 20 C.F.R. §§ 404.1594, 416.994. If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. The steps of this sequential process are as follow:

(1)     Is the individual engaging in substantial gainful activity;

(2)     Does the individual have an impairment of combination of impairments which meets or equals in severity an impairment identified in the Listing of Impairments;

(3)     Has the individual experienced a medical improvement;

(4)     Is the improvement related to the individual's ability to work (i.e., has there been an increase in the individual's residual functional capacity based on the impairment(s) present at the time of the most recent favorable medical determination);

(5)     If the individual has either not experienced a medical improvement or any such improvement is unrelated to his ability to perform work, do any of the exceptions to the medical improvement standard apply;

(6)     Does the individual suffer from a severe impairment or combination of impairments;

(7)     Can the individual perform his past relevant work;

(8)     Can the individual perform other work.

20 C.F.R. § 404.1594(f).

Moreover, when the Commissioner evaluates whether a claimant continues to qualify for benefits, the claimant is not entitled to a presumption of continuing disability. *See Cutlip*, 25 F.3d at 286. Rather, the decision whether to terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition." *Id.* However, the Commissioner has the burden of proof that a claimant has experienced medical improvement which renders her capable of performing substantial gainful activity. *See, e.g.*, *Kennedy v. Astrue*,

247 F. App'x 761, 764–65 (6th Cir. 2007); *Couch v. Comm'r of Soc. Sec.*, 2012 WL 394878, at *10 (S.D. Ohio Feb. 7, 2012).

The ALJ determined that Plaintiff suffers from: (1) seizure disorder/seizure like activity; (2) anxiety disorder; (3) attention deficit hyperactivity disorder; and (4) late effects of traumatic brain injury, severe impairments that, whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments set forth in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.49–50.)

The ALJ found that through June 23, 2017, Plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c), with the following limitations:

- no exposure to extreme cold or workplace hazards;
- no commercial driving;
- only simple instructions and simple, routine tasks;
- occasional interaction with supervisors and coworkers and only brief, superficial contact with the public;
- only occasional changes in the work setting or general nature of the tasks performed;
- no production-paced tasks, such as assembly line work or rush hour at a fast food restaurant;
- make only simple, work-related decisions; and
- be off-task or absent more than 20% of the workweek

(PageID.50–51.) The ALJ determined that with these limitations—in particular, the need to be off-task or absent more than 20% of the workweek—there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. (PageID.54–54.)

The ALJ further concluded, however, that as of June 24, 2017, due to medical improvement, Plaintiff no longer required an accommodation to be off-task or absent from work. (PageID.56–57.) Based on that improved RFC, the ALJ determined that Plaintiff was capable of

performing her past relevant work as a cleaner and other jobs that exist in significant numbers in the national economy.[1]  (PageID.58–59.)

## ISSUES

### I.    Treating Physician Doctrine

Plaintiff argues that the ALJ was bound to accept and give controlling weight to the December 2017 opinions of her treating psychologist,  Martin Waalkes, Ph.D., A.B.B.P., L.P., and treating psychiatrist, Curt Cunningham, D.O. (PageID.729, 763), that Plaintiff's functioning had not changed since July 14, 2016.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."[2]  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir. Nov. 7, 1991) (citation omitted).  The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial

---

[1] The ALJ determined that Plaintiff could also perform her past work as a cashier, even though the vocational expert testified that Plaintiff's RFC would eliminate that job.  (PageID.58, 92.)  Plaintiff does not raise this issue on appeal, and because the ALJ found that Plaintiff could perform her past work as a cleaner and other jobs existing in significant numbers in the national economy, any error is harmless.  *See Byrd v. Comm'r of Soc. Sec.*, No. 1:07-cv-880, 2009 WL 539925, at *5 (W.D. Mich. Mar. 3, 2009).

[2] The Commissioner has issued new regulations regarding opinion evidence, but those regulations do not apply to claims that were filed before March 27, 2017.  20 C.F.R. § 404.1520c.

medical evidence.  *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1982); *see also Cutlip*, 25 F.3d at 286-87.

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.*  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Id.* (citation omitted).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded.  *Id.* at 376.  In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.  *Id.* (citing 20 C.F.R. § 404.1527).  While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment.  *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

In a letter dated December 7, 2017, Dr. Waalkes stated that the Mental Medical Source Statement he completed in July 2016 still accurately reflected Plaintiff's present capabilities and limitations.  (PageID.729.)  Dr. Waalkes  further commented that he was "not able to speak to the

level of supervision" that Plaintiff presently required, but he was confident that her cognitive capacities and behavioral patterns remained as described in his July 2016 report.  (*Id.*)  Dr. Cunningham signed a similar letter in December 2017, stating that Dr. Waalkes's July 2016 report continued to accurately reflect Plaintiff's level of functioning.  (PageID.763.)  The ALJ discounted Drs. Waalkes's and Cunningham's opinions because they "were based on medical source statements from 2016 and not the most recent assessments."  (PageID.57–58.)

In contrast to the opinions of Drs. Waalkes and Cunningham, the ALJ gave "[g]reat weight" to the opinion and assessment of Jocobus Donders, Ph.D., who performed neurological testing in June 2017.  (PageID.57.)  Dr. Donders had performed neurological testing a couple of years earlier, in August 2015.  At that time, Plaintiff reported mild symptoms of depression and "appeared somewhat anxious."  (PageID.599.)  Dr. Donders reported "notable progress" from prior testing by Dr. Strong, in terms of recall and problem-solving, but Plaintiff continued to have problems with complex attention (dual tasking).  (PageID.600.)  However, Dr. Donders was more concerned with her moderate anxiety than her cognitive functioning, and noted that he "would not feel comfortable releasing her for any kind of employment or even vocational rehabilitation."  (*Id.*) Following his June 2017 testing and consultation with Plaintiff, Dr. Donders found "evidence for some meaningful progress" from her previous evaluations in her ability to solve novel problems, learn from her mistakes, and adjust to changing task demands.  (PageID.751.)  He noted that Plaintiff still had problems in other areas, such as verbal recall, which suggested that visual cues or reminders would work well for her.  (*Id.* at PageID.751–52.)  Dr. Donders found "nothing to suggest an acute risk for psychological decompensation."  (*Id.* at PageID.752.)  Dr. Donders noted that because her reaction time, attention, and impulse control were within normal limits, Plaintiff should be able to drive so long as she avoided distractions.  (*Id.*)  He reiterated that Plaintiff's

prospects for return to work were "encouraging" in light of her improved executive functioning. (*Id.*)

Plaintiff's argument that the ALJ was bound to give the opinions of Drs. Waalkes and Cunningham more deference that that of Dr. Donders lacks merit. As set forth above, and as the ALJ noted, Dr. Donders had a "longitudinal relationship" with Plaintiff and did not examine her only once, as Plaintiff implies. (PageID.57.) Moreover, Plaintiff returned to Dr. Waalkes in December 2017 for the sole purpose of obtaining paperwork for her appeal of the denial of disability benefits. (PageID.727.) At the time, Dr. Waalkes had not treated Plaintiff for almost nine months. In his final session with Plaintiff in March 2017, Dr. Waalkes noted that Plaintiff was thinking "about developing a small reselling business from home;" was engaging in outdoor activities, such as snowshoeing and hiking, with her boyfriend; was involved with her church; and had gone almost six months without any seizure-like activity and denied any recent panic attacks. Dr. Waalkes wrote that "[d]ischarge is favorable with goals met and no complications." (PageID.674.)

In addition, the ALJ's treatment of the medical opinions was consistent with the record, including Dr. Waalkes's own treatment notes, which showed that Plaintiff was dealing with the challenges of parenting a very active child, had traveled at least twice without incident, had started a new relationship, had no new seizures or panic symptoms, and was preparing to take a drivers test. (PageID.674, 676–79, 700.) Thus, the evidence contradicts Drs. Waalkes's and Cunningham's assertion that Plaintiff's mental impairments remained unchanged. In sum, the ALJ's rational for discounting Drs. Waalkes's and Cunningham's opinions is supported by substantial evidence.[3]

---

[3] Plaintiff's counsel acknowledged that she drafted the December 2017 opinion letters for both Drs. Waalkes and Cunningham. (PageID.68–69.) Along with her proposed letters, counsel provided a copy of Dr. Waalkes's July 2016

## II.    Plaintiff's RFC

Plaintiff also argues that substantial evidence does not support the ALJ's decision, but she fails to develop the argument.  Regardless, the undersigned discerns that Plaintiff challenges the ALJ's RFC determination.

The ALJ is tasked with determining a claimant's RFC.  *See* 20 C.F.R. §§ 404.1546(c), 416.946(c).  While the ALJ may not "play doctor" and substitute his own opinion for that of a medical professional, the ALJ is not required to tailor his RFC assessment to any particular opinion or item of medical evidence.  *See, e.g., Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).  Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity."  *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).

As set forth above, the ALJ's RFC finding was supported by Dr. Donders's opinion that Plaintiff had made meaningful progress toward returning to work (PageID.751), as well as by treatment records indicating that Plaintiff's condition had begun to improve as early as October 2016.  By 2017, Plaintiff was exploring running an Internet sales business out of her home, sought to resume driving, and expressed an interest in returning to work.  (PageID.756.)  While Plaintiff still had some deficits in memory, anxiety, and emotional maturity, the ALJ fully accounted for these limitations by restricting Plaintiff to simple work with social limitations.  (PageID.57.)  Even if there is some evidence in the record that may support a finding that Plaintiff had not sufficiently progressed to return to work on the date that the ALJ determined, her finding that Plaintiff no

---

statement but did not provide a copy of Dr. Donders's recent neuropsychological testing results.  (PageID.69.)  Thus, the ALJ had no reason to conclude that either doctor had reviewed that information prior to signing the proposed opinion letters.

longer required a restriction that Plaintiff be off-task/absent from work 20% of the time as of June 24, 2017, was "not so wholly arbitrary so as to carry the ALJ's decision outside the 'zone of choice' that the ALJ possesses in rendering disability decisions."  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009).  Accordingly, this argument is rejected.

## <u>CONCLUSION</u>

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within that time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Dated: January 17, 2020                                   /s/ Sally J. Berens
                                                          SALLY J. BERENS
                                                          U.S. Magistrate Judge